WALKER v. REISTER.

A bill, filed by the assignee in bankruptcy of an insurance company against its former officers and directors, alleges that they had divided among themselves and friends certain bonds belonging to it, and prays for an accounting and relief. It appears from the proofs that the bonds were never the property of the company, but were, without consideration, borrowed, by some of its officers, for the fraudulent purpose of exhibiting them, as part of its assets, to the official examiners, thus furnishing evidence of its sound condition, and were afterwards returned, according to agreement, to their real owners. *Held,* that the bill was properly dismissed.

APPEAL from the Circuit Court of the United States for the Eastern District of Missouri.

The facts are stated in the opinion of the court.

*Mr. Nathaniel Myers* for the appellant.

*Mr. James O. Broadhead, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The appellant, who was assignee in bankruptcy of the North Missouri Insurance Company, filed his bill in equity in the District Court for the Eastern District of Missouri against the appellees, who had been the officers and directors of the corporation prior to the bankrupt proceedings. The District Court, after answer, replication, and voluminous depositions, dismissed the bill, and the Circuit Court affirmed that decree on appeal. From this latter decree the assignee appeals to this court.

The bill, in substance, sets forth that, at a certain date prior to the institution of proceedings in bankruptcy, the corporation was the owner of bonds of the counties of Macon, Schuyler, Knox, and Adair, and other securities, amounting in the aggregate to over $136,000; that the bonds were in the possession of the company in the month of May, 1873, when they were exhibited to the superintendent of the insurance department of the State of Missouri, and a similar officer of the State of Ohio, by the defendants, or some of them, as investments of the funds of the company, and as evidence to these superintendents of the sound condition of the company and its right to continue the business of insurance. The foundation of the relief sought is thus stated in the language in the bill: —

"Yet your orator further shows that, notwithstanding the premises, the said directors and officers, unmindful of their duty aforesaid, but intending to cheat and defraud the said insurance company and its creditors aforesaid, prevailed upon and procured the said treasurer [the treasurer of the company] to unite and co-operate with them, as in fact he did unite and co-operate with them, in parcelling out and distributing the said notes and bonds among themselves and their friends at some time prior to the nineteenth day of June, 1873, wholly without consideration whatever, and in gross disregard of their duty as such directors and officers of said company, and thereby and through the neglect of duty, and through the fraud and breach of trust of the said officers and directors of said company, the said bonds and notes became and were wholly lost to the said company and its creditors, and to your orator as assignee aforesaid."

The answer denied that the company ever owned the bonds and that they were so parcelled out and distributed among the defendants and their friends.

The clear result of a large amount of testimony in regard to the bonds in controversy is that they were borrowed from divers persons and corporations who owned them, or were placed in the temporary possession of the officers of the insurance company for the purpose of being shown to the examining superintendents as property of that company, with the understanding that as soon as the examination was over they should be returned to their owners; and that this was done. It is also established that the parties who actually owned the bonds were aware of the fraudulent use which was to be made of them, and were willing in this way to contribute to the deception practised on the official examiners.

Nothing of this, however, is alleged in the bill or is found in the answer. The relief sought is based squarely on the ground that the bonds in question, being in possession of the defendants as the property of the insurance company, were by them unlawfully converted to their own use, whereby the company and the creditors of the company, by reason of its insolvency, were defrauded of their value. The bill makes a case of conversion for which an action in the nature of trover at common law would lie, and it is difficult to see any sufficient ground for the interposition of a court of equity.

But, apart from this, it seems that unless the complainant has sustained both of the principal allegations of the bill, — namely, that the bonds were the property of the company, and that the defendants unlawfully converted them to their own use, — his bill was properly dismissed.

Now, the testimony makes it very clear that the defendants did not convert the bonds to their own use or distribute them among their friends, as alleged in the bill. It is also quite apparent that they received no consideration for the return of the bonds to their owners, and committed no fraud on the insurance company in the transaction, and that, in fact, they were acting with a mistaken zeal in what they supposed to be the interest of their corporation.

They do not, therefore, occupy the position of embezzlers of

funds intrusted to their charge by the company; but that is precisely the effect of the allegations of the bill which we have copied, and it is also the only inference to be drawn from the whole of its scope and tenor.

So, also, we do not think that the evidence establishes that the insurance company was ever the owner of these bonds. It never paid anything for them, nor gave consideration in any other way. It lost nothing by the transaction in which the bonds came into the possession of its officers and passed out of that possession.

It had not, therefore, any honest claim to the ownership of the bonds; and if the dishonest purpose for which they were used can be imputed to the corporate entity, it is very certain that when the transaction was over it could confer no rightful authority on that corporation to retain or reclaim the bonds. As between the insurance company and the owners of the bonds the title never passed from the latter, nor did any vested ownership pass to the former. How, then, can it be said that these officers cheated or defrauded the company? or that the bonds were lost to the company by their neglect or their fraud or breach of trust? How could the corporation lose what it did not own? How could it be cheated out of that to which it had no right? How could it be defrauded out of property belonging to others and in the hands of those who owned it?

A very ingenious argument is made by counsel of appellant, on which he places much reliance, to the effect that having proved that these bonds were once in the possession of the insurance company, and were not to be found when its assets were turned over to the assignee, he has made a *prima facie* case, and that defendants cannot set up in their defence the fraudulent transaction which shows their own guilt.

It is not necessary to decide here whether, if the complainant had brought an action of trover, and had proved before the jury by some competent witness that these bonds were in the hands of the officers of the company, who asserted them to be the bonds of the corporation, they would in defence have been permitted to show the facts we have stated because of the turpitude of their action in the matter. We need not decide this, for the reason that, in proving the possession of these bonds, the

complainant has proved at the same time the character of that possession. He has proved that the possession of the insurance company was not with claim of ownership, but it was a temporary loan, not of the bonds, but of their possession for a definite purpose, which being accomplished they were returned to their real owners. It was one transaction, and must be so considered in the broad view of a court of equity, — a transaction in which the fraudulent purpose is fatal to the title of the insurance company, or any right which that company could assert under it. A court of equity will not stop halfway in the investigation of a fraud which is quite apparent, to give one of the parties to it affirmative relief at the expense of the other. In such cases better is the condition of the defendant.

It is also argued that the fraud was against the creditors of the company, and the assignee can pursue the party who defrauded them.

To this there are several sufficient answers.

1. The bill is not framed on that foundation, but distinctly on the ground of a conversion of the funds of the company, which, if true, is to that extent a fraud on the company's creditors. But as we have already shown, the company was defrauded of nothing, because it did not own the bonds.

2. Though the bill alleges in a general way that the exhibition of these bonds was a fraud upon the creditors, it is difficult to see how that can be if the bonds were, as the bill alleges, at that time the property of the company. If that was so, the officers had a right, and were in duty bound, to exhibit them.

3. There is no allegation that any particular creditor ever became so, or was influenced in his action toward the corporation by reason of this exhibition of these securities, and it is denied in the answer that any creditor was so influenced, and no proof to establish the charge is given.

4. And, last, it seems to be reasonable that if any creditor was misled to his loss by this fraudulent misconduct of the officers of the company, he would have a corresponding right to a remedy in his own name against them to the extent of his individual injury, quite independent of the right of the

assignee to recover for property of the corporation embezzled or converted by these officers.

In short, whatever remedy there may exist to any one to pursue these parties and others for their share in this transaction, either at law or in equity, this bill, founded on a devastavit of assets of the company, — if language borrowed from a kindred branch of the law may be thus used, — cannot be sustained, because it is clear that the bonds which are said to have been converted were never the bonds of the bankrupt corporation.

*Decree affirmed.*