In re SWOFFORD BROS. DRY GOODS CO.

(District Court, W. D. Missouri, W. D. July 28, 1910.)

1. BANKRUPTCY (§ 11*) — JURISDICTION — RESTRAINT OF INTERFERENCE OF COURTS.

Bankruptcy Act July 1, 1898, c. 541, § 2, subd. 15, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3421), invests courts of bankruptcy with the power to make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for enforcement of the act. *Held*, that the section may be availed of to compel anything which ought to be done, or to prevent anything which ought not to be done against the enforcement of the law, provided the court of bankruptcy otherwise has jurisdiction of the person or subject-matter, and for such purposes the court has the plenary powers of a court of equity, and can exercise them for the ascertainment and enforcement of the rights and equities of the various parties interested in the bankrupt's estate, and where the bankrupt's estate was undergoing administration, and a proposition was made to buy the assets for a certain sum prior to termination of the year, allowed for filing claims. the court could restrain any proceeding which would disturb or change the matter in process of administration.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 11; Dec. Dig. § 11.*

Jurisdiction of federal courts in suits relating to bankruptcy, see note to Bailey v. Mosher, 11 C. C. A. 313.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. BANKRUPTCY (§ 22*)—JURISDICTION—PROTECTION OF JURISDICTION.**

A proceeding in bankruptcy being in equity, and the court having all the inherent powers of a court of equity to enforce and protect its jurisdiction, it may be appealed to by supplemental and ancillary bill to enforce its orders, sustain its jurisdiction, and protect parties before it in the enjoyment of rights secured under it, where jurisdiction is reserved or still retained, or even afterwards where the result of the interference would be a relitigation of the same subject-matter between the same parties.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 11; Dec. Dig. § 22.*]

**3. CORPORATIONS (§ 206*)—ILLEGAL ACTS OF OFFICERS—RIGHT OF ACTION.**

Where an officer of a corporation misappropriates property of the corporation to his own benefit, in respect to a stockholder, a right of action exists in the corporation itself, and the right of a stockholder, if any, is derived from that, as between a stockholder and the corporate management, the stockholder may sue where the company is under such hostile control that its proper officers will not in the nature of things sue in its name.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 791–796; Dec. Dig. § 206.*

Rights of stockholders to sue or defend on behalf of corporation as dependent on refusal of corporation or officers to act, see note to Eagle Iron Co. v. Colyar, 87 C. C. A. 390.]

**4. BANKRUPTCY (§ 145*)—RIGHTS VESTING IN TRUSTEE—RIGHT OF ACTION.**

Rev. St. Mo. 1899, § 1338 (Ann. St. 1906, p. 1075), provides that the circuit court shall have jurisdiction over the officers of corporations organized under the article pertaining to manufacturing and business companies, to compel payment by them to the corporation which they represent and to its creditors, of money and of the value of property which they have acquired to themselves or transferred to others, or lost, or wasted by violation of their duties or abuse of their powers. *Held*, that in a bankruptcy proceeding the right to compel such payment vests in the trustee, becoming assets in his hands, which may be disposed of under the direction of the court under Bankruptcy Act July 1, 1898, c. 541, § 70, subd. 6, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), vesting in the trustee the bankrupt's title, except as to property exempt, in rights of action arising from the unlawful taking, detention, or injury to his property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 205, 230–234; Dec. Dig. § 145.*]

**5. BANKRUPTCY (§ 4*)—PURPOSE OF ACT.**

The policy and purpose of national bankruptcy acts is primarily to secure an equal and speedy distribution of the bankrupt's property among his creditors, and to relieve the honest debtor from legal proceedings for his debts, to enable him to start afresh in business life; but the distribution of the property is the principal object to be attained.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 314; Dec. Dig. § 4.*]

**6. BANKRUPTCY (§ 11*)—JURISDICTION.**

A court of bankruptcy has no concern with an action against a bankrupt company and its president who had previously offered and had had accepted by the bankruptcy court a proposition to buy the assets of the company, for an accounting based on the claim that the president, through his purchase and settlement with the trustee, had secured assets largely exceeding the amount paid by him to the trustee, and had secured a great advantage for which he, in equity, would be required to account to the bankrupt and its stockholders so long as it does not involve the impairment of the orders, decrees, and other proceedings in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 11; Dec. Dig. § 11.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of Swofford Bros. Dry Goods Company, bankrupt. Supplemental bill to enjoin action in state court. Decree for complainant as to certain causes of action, and for defendant as to another.

Edwin A. Krauthoff, for complainant.
Silvers & Silvers, for defendant.

VAN VALKENBURGH, District Judge. On the 9th day of October, 1909, a petition in bankruptcy was filed in this court against the above-named bankrupt, and on the 28th day of October, 1909, an adjudication in bankruptcy was entered. Thereafter a trustee was appointed by the creditors who duly qualified and assumed charge of the assets of the bankrupt estate. This estate was largely involved, and in January, 1910, it developed that the unsecured claims against the bankrupt amounted approximately to $500,000, and that upon the assets applicable thereto the trustee had been able to realize in money approximately $125,000, and also had on hand some remnants of the stock of goods, the fixtures located in the store building, some accounts, bills receivable, equities in personal property pledged as collateral security, and some real estate and other claims of doubtful value. Among the latter were claims against one J. J. Swofford, the petitioner herein, who was the president and actively in control of the company up to the time the bankruptcy petition was filed.

On or about the 6th day of January, 1910, the petitioner Swofford filed in the bankruptcy case a proposition to buy all the remaining assets of the company in consideration of a payment to the trustee in bankruptcy of a sum of money sufficient, in addition to the cash then on hand and any cash that might be realized from the assets of the estate in bankruptcy, to pay each general creditor of the estate a dividend of 37½ per cent. upon the face of his claim as it might be provable and allowed. A further consideration moving to the applicant was expressed as follows:

"It being the intent of this application that by a decree of this court, and by such conveyances and receipts as the court may direct the trustee to make, any and all liability claimed to be due and owing the estate in bankruptcy or the trustee in bankruptcy or otherwise by your petitioner be receipted in full, and that the trustee in bankruptcy shall convey to your petitioner all the property of the bankrupt corporation of whatever kind or character or wherever situate."

The court ordered this application referred to the referee for hearing and disposition, with directions to notify each creditor of the bankrupt corporation of the terms of the offer. This was accordingly done, and, there being no objection on the part of the creditors, the court through its referee ordered that the proposition be accepted. The order made, after reciting the details of the payments to be made by Swofford, contained this provision:

"Upon the foregoing being accomplished, the title to all the property of the estate in bankruptcy of whatever kind or character or wherever situate shall be vested in J. J. Swofford, and all liabilities claimed to be due and owing the estate in bankruptcy or the trustee in bankruptcy by J. J. Swofford shall be deemed receipted and canceled in full, and the trustee is directed by such assignments, conveyances, and deliveries as the court shall direct the trustee to

make to convey the absolute title to the assets hereinbefore mentioned to J. J. Swofford and deliver the same to him."

The year within which claims may be presented does not expire until on or about October 28, 1910. The greater part of the assets were accordingly delivered to Swofford, who in turn paid to the trustee an amount of money sufficient to pay 37½ cents on the dollar upon each claim ascertained and allowed; the trustee reserving a substantial part of the assets to secure such future payments as might become due from Swofford on account of possible claims yet to be allowed. It will be observed, therefore, that the bankruptcy proceeding is still open and pending and can in no event be reported for closing until after October of this year.

In this state of the record, one A. Rosier, claiming to be a stockholder of the Swofford Bros. Dry Goods Company, filed in the circuit court of Jackson county, Mo., on the 20th day of May, 1910, his certain petition or bill for an accounting against the bankrupt company and the said J. J. Swofford as its president. This petition contains 23 paragraphs embracing 22 causes of action against Swofford for fraud upon the corporation in the management of its affairs as its president and on account of money and property acquired by him directly or indirectly and lost and wasted by a violation of his duties and an abuse of his powers as such president. Without considering these various causes of action in detail, it will be sufficient to state that the petition states in general that the action is instituted and prosecuted by the plaintiff on behalf of himself and the other stockholders of said corporation and on behalf of said corporation; that the defendant J. J. Swofford, as president of said corporation, had for a long time been wholly in charge thereof, dominating and controlling its business policy and the conduct of its affairs generally; that plaintiff had requested the trustee in bankruptcy to bring proceedings to redress the wrongs therein complained of; but that said trustee had failed and refused to do so; that the estate in bankruptcy had been fully settled. The first 21 causes of action pray damages against the defendant Swofford for having used the property of the company in various ways therein set forth for his own personal advantage and profit at the expense, disadvantage, and loss of said corporation. The twenty-second cause of action embraced in the twenty-third paragraph of the petition will be separately considered.

Thereupon the petitioner J. J. Swofford brings this ancillary or supplemental bill in connection with the bankruptcy proceeding setting up the situation as herein above detailed and praying this court to issue an order restraining the said Rosier from further prosecuting his suit against said Swofford and the bankrupt upon the grounds that the matters therein sought to be litigated have already been settled and adjudicated by the orders and decrees of this court; that the bankruptcy proceeding being still open and unsettled this suit, in effect, impedes the enforcement of the bankruptcy act and interferes with the administration of the estate in bankruptcy; and further that this court owes it to the petitioner herein to protect the title which he as a purchaser acquired at the sale made by this court,

and in general to secure to him whatever rights he acquired by virtue of the acceptance of his proposition and the order made in relation thereto.

At the threshold of this discussion we are met by the contention of the defendant Rosier that the District Court, as a court of bankruptcy, has no power to enjoin or stay proceedings in a state court in a case such as this; that its power to interfere is limited to proceedings which impede the enforcement of the bankruptcy act or interfere with the administration of the estate in bankruptcy. It is contended that such is not the effect of the action in the state court. Subdivision 15 of section 2 of the act (Act July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421]) invests courts of bankruptcy with the power "to make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act." It is said this section may be availed of to compel anything which ought to be done for, or to prevent anything which ought not to be done against the enforcement of the law; provided the court of bankruptcy otherwise has jurisdiction of the person or the subject-matter. For such purposes the court has the plenary powers of a court of equity and can exercise the powers of such a court for the ascertainment and enforcement of the rights and equities of the various parties interested in the estate of the bankrupt company. In re Siegel-Hillman Dry Goods Co. (D. C.) 111 Fed. 980–983; Dodge v. Norlin, 133 Fed. 363–368, 66 C. C. A. 425; Bardes v. Hawarden Bank, 178 U. S. 524–535, 20 Sup. Ct. 1000, 44 L. Ed. 1175.

In Re Rochford et al., 124 Fed. 182–187, 59 C. C. A. 388, 393, the Court of Appeals of this Circuit, speaking through Judge Sanborn, said:

"The administration and distribution of the property of bankrupts is a proceeding in equity, and when authorized by act of Congress it becomes a branch of equity jurisprudence. Property in the custody of a court of equity for administration is always held by it in trust for those to whom it rightfully belongs. The jurisdiction to inquire and determine who the lawful owners of it are, and to that end to call before it all claimants by a reasonable notice or order to present their claims to the court within a reasonable time, or to be barred of any right or interest in the property in its custody, or in its proceeds, is a power inherent in every court of equity, incidental and indispensable to the authority to administer the property in its possession and to distribute its proceeds."

In this case the estate of the bankrupt was and is undergoing administration in this court. The visible assets were manifestly insufficient to pay more than a comparatively small dividend upon the claims allowed. A proposition was made by the petitioner Swofford to buy the remaining assets, which included claims against himself, upon the payment to the trustee of a sum of money sufficient to enable all creditors having provable claims to receive $37\frac{1}{2}$ cents of the face thereof. The court had full power to entertain such a proposition and in its discretion to accept it. This the court did, and the contract raised by that judicial determination has been in large part executed; not wholly executed, however, for the reason that further claims may still be filed and further payments by Swofford may and will become

necessary. The matter is, therefore, still in process of administration by this court, and cannot be disturbed or changed without seriously impeding the enforcement of the act and interfering with the administration of the estate. In such case there can be little doubt of the power of this court to restrain by injunction any proceeding which will have this damaging effect.

The jurisdiction of this court would undoubtedly he sustained upon still broader grounds. We have seen that a proceeding in bankruptcy is a proceeding in equity, and that for the purposes of enforcing and protecting its jurisdiction a court of bankruptcy has all the inherent powers of a court of equity. This being the case, it may be appealed to by supplemental and ancillary bill to enforce its orders, sustain its jurisdiction, and protect parties before it in the enjoyment of rights secured through and under it, and this is always true where jurisdiction is reserved or still retained, and even afterwards where the result would be a relitigation of the same subject-matter between the same parties. A bill addressed to this power of the court is essentially supplemental and ancillary in its nature and inheres in the general equity jurisdiction of the court. Henrie v. Henderson et al., 145 Fed. 316–320, 76 C. C. A. 196; Root v. Woolworth, 150 U. S. 401–411, 14 Sup. Ct. 136, 37 L. Ed. 1123; Pickens v. Dent, 106 Fed. 653–656, 45 C. C. A. 522; Riverdale Mills v. Manufacturing Co., 198 U. S. 188–195, 25 Sup. Ct. 629, 49 L. Ed. 1008; Julian v. Central Trust Co., 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 629; State Trust Co. v. K. C. P. & G. R. R. Co. (C. C.) 110 Fed. 10–18; Chicago, R. I. & P. Ry. Co. v. St. J. Union Depot Co. (C. C.) 92 Fed. 22.

This being so, it remains to be seen whether the bill filed appeals properly to the protecting power of this court, and the answer to this question involves primarily whether the claims sued for by Rosier in the state court were embraced in the sale by the trustee in bankruptcy to Swofford. In other words, whether they were assets of the bankrupt estate, and, as such, passed to Swofford under the terms of this sale, and whether Swofford was released therefrom by the action of this court. As has been already stated, the first 21 causes of action, embracing paragraphs 2 to 22, inclusive, of defendant's petition in the circuit court of Jackson county, pray damages against the defendant Swofford for having fraudulently used the property of the company in various ways therein set forth for his own personal advantage and profit at the expense and to the disadvantage and loss of the corporation.

Section 70 of the bankruptcy act provides that:

"The trustee of the estate of a bankrupt * * * shall * * * be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt in (6) rights of action arising upon contracts or from the unlawful taking or detention of or injury to his property."

Each one of the counts of the petition just referred to involves, either directly or indirectly, the taking and misappropriation of the moneys or property of the corporation; the diversion of the same from their legitimate channel to the use and benefit of its president Swofford, amounting to misappropriation or conversion. Counsel for

defendant in their brief and argument speak of this action as arising from fraud committed against a corporation in the conduct of its business. This arose in each case from the handling and disposition of the property of the company, and it is impossible to consider the acts complained of in any other light than as contributing to the injury and damage of that property. The courts of Missouri have always viewed such acts on the part of managing officers, involving as they do fraud and not merely passive dereliction of duty, as vesting a cause of action in the corporation, and through it in the creditors. In respect to a stockholder the right of action exists in the corporation itself, and the right of a stockholder, if any, is derived from that. Donham v. Hahn, 127 Mo. 439–445, 30 S. W. 134.

"The wrong committed by an officer of the corporation which affects the stockholders generally is not a wrong to them as individuals, but to the corporate entity." Cooley on Torts, par. 578.

"The cause of action for the violation of a corporate right accrues to the corporation and not to the stockholders, and generally the remedy must be obtained by, and in the name of, the corporation." Hannerty v. Standard Theater Co., 109 Mo. 297–305, 19 S. W. 82, 84; Loomis v. Missouri Pacific Ry. Co., 165 Mo. 469, 65 S. W. 962.

It is undoubtedly the law that as between stockholders of a corporation and its management the latter may sue in cases where the company is under such hostile control that its proper officers will not in the nature of things sue in its name; but that does not alter the fact that the primary right is in the corporation. Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827. Such causes of action as are here involved differ sharply from those arising out of a personal wrong suffered by the bankrupt, such as injuries to person, reputation, or personal comfort. The distinction is well pointed out by De Haven, District Judge, in Re Haensell, 91 Fed. 355.

In Walker v. Reister, 102 U. S. 467–471, 26 L. Ed. 220, Mr. Justice Miller said:

"The bill is not framed on that foundation, but distinctly on the ground of a conversion of the funds of the company, which, if true, is to that extent a fraud on the company's creditors."

In Claflin v. Houseman, Assignee, 93 U. S. 130–135, 23 L. Ed. 833, Mr. Justice Bradley said:

"The assignee, by the fourteenth section of the bankrupt act, becomes invested with all the bankrupt's rights of action for property, and actions arising from contract, or the unlawful taking or detention of or injury to property, and a right to sue for the same. The actions which lie in such cases are common-law actions, ejectment, trespass, trover, assumpsit, debt, etc., or suits in equity."

In fact this principle has uniformly been recognized by the Supreme Court of the United States in many decided cases. Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815; Erwin v. United States, 97 U. S. 392, 24 L. Ed. 1065; Comegys v. Vasse, 1 Peters, 213, 7 L. Ed. 108. In the latter case Mr. Justice Story said:

"In general, it may be affirmed that mere personal torts, which die with the party, and do not survive to his personal representative, are not capable of passing by assignment; and that vested rights ad rem and in re, possibili-

ties coupled with an interest, and claims growing out of and adhering to property, may pass by assignment."

An express statute of the state of Missouri, however, would seem to dispose of all argument in the premises. Section 1338, Rev. St. Mo. 1899, vol. 1, p. 434 (Ann. St. 1906, p. 1075), provides that the circuit court shall have jurisdiction over the directors, managers, trustees, and other officers of corporations organized under the article pertaining to manufacturing and business companies, among other things:

"To order, decree and compel payment by them to the corporation which they represent, and to its creditors, of all sums of money and of the value of all property which they have acquired to themselves, or transferred to others, or may have lost or wasted by any violation of their duties or abuse of their powers as such directors, managers, trustees or other officers of such corporation."

This right is given to the corporation and to its creditors. In any aspect of the case, in a bankruptcy proceeding the right would be vested in the trustee. That being so, such rights become assets in his hands and may be dealt with, disposed of, sold, or compromised by him under the direction of the court. As between the corporation or its stockholders and creditors, the rights of the latter would necessarily be paramount. It must be conceded then, I think, that such rights as Rosier seeks to enforce were vested in the trustee of the bankrupt estate. For reasons thus appearing, it is unnecessary to consider whether the trustee could or should go into the state court to protect his interests, or whether the bankrupt or a stockholder could sue.

It must be remembered that the policy and purpose of all national bankruptcy acts is primarily to secure an equal and speedy distribution of the property of the bankrupt among his creditors. A further object is to relieve the honest debtor from legal proceedings for his debts, and to enable him to have a fresh start in business life; but the distribution of the property is the principal object to be attained—the discharge of the debtor is incidental and subordinate. The rights of stockholders, although subsisting as between the corporation and dishonest officers, are and must be inferior to those of creditors in a bankruptcy proceeding. In such proceedings creditors are the favorites of the law, and the object is to secure them not only an equal distribution of the property, but a speedy one. The court and its officers clothed with full authority, upon canvassing the possibilities and probabilities in each individual case, will decide what is best to be done from the standpoint of the creditor, and may, and will, act accordingly. When they have done so, their acts cannot be reviewed and the matter relitigated in another forum and at the suit of the parties or their privies.

In this case the trustee had assets of the bankrupt to dispose of, and among them were claims against the petitioner Swofford. These claims were civil in their nature. They were the subject of sale, compromise, or adjustment for the benefit of the creditors. Swofford made an offer which was accepted. Both he and the court are carry-

ing out the terms of their contract. His release from these claims was as much a consideration moving to him as any piece of tangible property purchased from the trustee. This court is as bound to protect his acquittance as it is to deliver to him the tangible property he bought. To hold otherwise would be to render unstable and futile all the proceedings of like nature in a bankruptcy court through which the property of the bankrupt is administered and money is realized from which distribution may be made to creditors.

A court of bankruptcy, under the existing circumstances, may, and doubtless did, conclude that the interest of the creditors was better subserved by this arrangement, which secured to them a speedy and largely increased dividend, than by resorting to the slower and uncertain process of attempting to realize from the assets by collection and litigation. This option rested with the creditors and their representatives in the court. The release of Swofford was a substantial feature of the agreement. Whatever rights against him may have existed in others beside the creditors had vested in the trustee in bankruptcy, and a release by this court was complete and absolute.

It will not do to say that the court of bankruptcy, through its referee and trustee, may have made a bad bargain, or may have acted unwisely. No court can recognize such a criticism in a collateral proceeding. Moreover, if such considerations are to be urged, it must be in the same court where the matters were litigated by seasonable and appropriate application to that tribunal. There, and not elsewhere, the remedy, if there be one, lies.

The twenty-second cause of action represented by the twenty-third paragraph of the Rosier petition presents a different question. In this count it is claimed, in substance, that the petitioner Swofford by virtue of his purchase from and settlement with the trustee in bankruptcy secured assets which largely exceeded the amount of money paid by him to the trustee; that by reason of the premises he secured to himself a great advantage and benefit for which he should, in equity and good conscience, be required to account to the bankrupt and its stockholders. With such a controversy, so long as it does not involve the impairment of the orders, decrees, and other proceedings in bankruptcy, this court has nothing to do, and the parties must be left to litigate such matters in the forum where the jurisdiction properly lies.

It follows from the conclusions reached that the defendant Rosier must be restrained from prosecuting in the circuit court of Jackson county, Mo., the 21 causes of action embraced in paragraphs 2 to 22, inclusive, of his petition, and that, as to the remaining cause of action embraced in paragraph 23 of that petition, the injunctive relief prayed for must be denied.

It is so ordered.