## SEABOARD SMALL LOAN CORPORATION et al. v. OTTINGER.

### No. 3129.

Circuit Court of Appeals, Fourth Circuit.

June 17, 1931.

W. Warren Dickerson, of Roanoke, Va., for appellants.

A. S. Hester, of Lynchburg, Va., for appellee.

Before PARKER and SOPER, Circuit Judges, and COCHRAN, District Judge.

PARKER, Circuit Judge.

On December 24, 1929, one D. P. Ottinger, an employee of the Norfolk & Western Railway Company, borrowed of the Seaboard Small Loan Corporation of Lynchburg, Va., the sum of $50, giving as security for the loan a deed of trust on certain personal property and executing an assignment of 10 per cent. of his monthly wages for a period of forty months. This assignment provided that copy should not be served upon the railway company so long as there should be no default in the monthly payments provided for. Four payments on the debt left a balance due on May 30, 1930, of $30. On June 19th Ottinger filed a voluntary petition in bankruptcy and was duly adjudged a bankrupt; the debt due to the loan corporation being properly scheduled among his liabilities. He filed petition for discharge on September 15, 1930; and discharge was granted on November 4th.

After filing petition in bankruptcy, Ottinger made no further payments on the debt due the loan corporation; and it thereupon proceeded, on July 28, 1930, to file with the railway company copy of the assignment of wages and to demand that 10 per cent. of the monthly wages of Ottinger be retained and paid to it thereunder. This suit was then instituted by Ottinger to enjoin the loan corporation and its treasurer from interfering with the wages due him by the railway company and to require them to withdraw the assignment order filed with the company. Defendants answered, challenging the jurisdiction of the court and asserting a lien on the wages of Ottinger under the assignment order, notwithstanding the adjudication of bankruptcy or any discharge that might be granted. Discharge was granted Ottinger while the matter of the injunction was pending. Thereafter, on November 15th, the District Judge granted the injunction prayed, and the defendants appealed. The appeal presents two questions for our consideration: (1) Whether after the adjudication and discharge in bankruptcy there was any lien by reason of the assignment order on the wages earned by the bankrupt; and (2) if not, whether the court below had jurisdiction to enjoin the loan company and its treasurer from attempting, by the assertion of the lien, to collect a debt discharged by the bankruptcy.

On the first question, it is clear that there was no lien by reason of the assignment order on wages earned by the bankrupt subsequent to the adjudication of bankruptcy. The rule is that an assignment of wages to be earned in the future is not good at law because ineffective to pass legal title, but will be enforced in equity. It is enforced in equity, not as a conveyance in præsenti of what manifestly does not exist, but because it is regarded in equity as a contract to take effect and attach to the wages assigned as soon as they come in esse. Until the wages are earned, it is regarded as an agreement to convey; after that time as a conveyance. Emerson v. European & N. A. R. Co., 67 Me. 387, 391, 24 Am. Rep. 39, 41; Rodijkeit v. Andrews, 74 Ohio St. 104, 77 N. E. 747, 6 Ann. Cas. 761, 5 L. R. A. (N. S.) 564 and note. The assignment in this case did not, therefore, create a lien upon the wages of the bankrupt at the time it was executed, but such lien was to arise at the time the wages should be earned. Until then the assignment was no more than a contract of the bankrupt, the obligation of which was discharged by the bankruptcy in the same way that his other personal obligations were discharged.

It is true that the rights of lienors under existing liens not forbidden by the Bankruptcy Act are preserved by that act; but the trouble here is that there was no lien on the wages in question existing at the time of the filing of the petition in bankruptcy. The loan company held nothing but a debt against the bankrupt and a contract providing for the creation of a lien in the future when wages should be earned. Before this contract could give rise to a lien, its obligation was discharged by the bankruptcy; and the debt, without which no lien could exist, was discharged also. A few cases have held that under such circumstances the assignment will be enforced notwithstanding the bankruptcy of the assignor. Mallin v. Wenham, 209 Ill.

252, 70 N. E. 564, 65 L. R. A. 602, 101 Am. St. Rep. 233; Citizens' Loan Ass'n v. Boston & Maine Railroad, 196 Mass. 528, 82 N. E. 696, 14 L. R. A. (N. S.) 1025, 124 Am. St. Rep. 584, 13 Ann. Cas. 365. But, with due respect to the courts so holding, we do not think the decisions are sound. The weight of reason and authority is to the contrary. In re West (D. C.) 128 F. 205, 206; In re Karns (D. C.) 148 F. 143; In re Home Discount Co. (D. C.) 147 F. 538, 547; In re Ludeke (D. C.) 171 F. 292; Progressive B. & L. Ass'n v. Hall (C. C. A. 4th) 220 F. 45; Levi v. Loevenhart & Co., 138 Ky. 133, 127 S. W. 748, 749, 30 L. R. A. (N. S.) 375, 137 Am. St. Rep. 377; Leitch v. Northern Pac. R. Co., 95 Minn. 35, 103 N. W. 704, 5 Ann. Cas. 63; 7 C. J. 411; note 14 L. R. A. (N. S.) 1025 et seq.

The leading case upon the subject is In re West, supra, decided in 1904 by Judge Bellinger of the district of Oregon. He thus clearly and concisely states the principles applicable: "The theory of a lien upon the earnings of future labor is not that it attaches to such earnings from the moment of contract of pledge or assignment, but from the moment of their existence. It is needless to say that there can be no lien upon what does not exist. A pledge or assignment of future wages under an existing employment is said to create an equitable interest in such wages. Stott v. Franey, 20 Or. 410, 26 P. 271, 23 Am. St. Rep. 132. This is true of wages earned upon a general employment, as well as those earned upon a definite contract. In this case the railroad company was under no obligation to employ the bankrupt, nor he to work for the company. If future earnings in such a case can be said to have a potential existence, they are the subject of an agreement for a lien; but the lien, or the so-called equitable interest, does not attach until the wages come into existence, and until the lien does attach there is no lien. The discharge in bankruptcy operated to discharge these obligations as of the date of the adjudication, so that the obligations were discharged before the wages intended as security were in existence. The law does not continue an obligation in order that there may be a lien, but only does so because there is one. The effect of the discharge upon the prospective liens was the same as though the debts had been paid before the assigned wages were earned. The wages earned after the adjudication became the property of the bankrupt clear of the claims of all creditors. Collier on Bankruptcy, 509. These debts cannot escape the operation of the bankruptcy law by an agreement for a lien upon what the debtor expected to earn, but did not earn until after the adjudication of bankruptcy."

In the case of In re Home Discount Co., supra, Judge Jones of the Northern district of Alabama made exhaustive investigation of the subject, with special reference to the purpose and intent of the bankruptcy law with relation thereto, and we agree with his statement of the law. Said he:

"The effect of the assignment, without regard to its infirmities under the local statute, is avoided by the provisions of the bankruptcy law as to wages earned after the filing of the petition. The power or ability of the debtor to earn wages in the future under a subsisting contract, standing apart from anything which it has brought into existence as property, is the mere right of the debtor to create property in the future. One dominant purpose of the bankruptcy statute is to prevent creditors from seizing, directly or indirectly, upon this right of the bankrupt, after his adjudication, by applying its subsequent fruits to anterior obligations. * * * The debtor's right to earn wages in the future and to dispose of the fruits of his labor is not 'property' in any sense in which the bankruptcy statute uses the term, but constitute rather rights and privileges which go to make up a man's liberty and freedom. The plain purpose of the statute is that the title and right to all things and rights which do not fall within the vesting words of section 70 of the bankruptcy statute (30 Stat. 565 [U. S. Comp. St. 1901, p. 3451, 11 USCA § 110]) shall remain in the bankrupt, and that as to the rights or things thus saved to him he shall be released from all liability to answer for prior debts and contracts, with certain exceptions not here material. The right of the debtor to work and contract for future service is not mentioned, directly or inferentially, in the rights or things required to be sold, appraised, or scheduled, or which pass to the trustee for the benefit of creditors. The studied enumeration of the particular rights and things which the bankrupt is required to surrender takes all other rights and things not named without the definition, thus fixed, of the 'property' which the statute intends to take from the bankrupt or to pass to his creditors. Whatever he is not required to surrender is his absolutely, freed from the enforcement of the obligation of his prior contracts, unless at the time of the filing of the petition it has taken the form of property,

upon which a lien has fastened. In that event only does he take it subject to the performance of prior contracts concerning it. * * *

"The wages not being in existence at the time of the adjudication, and the right to earn them not then being subject to a lien, there was no property or thing in existence, at that time, upon which a lien could attach, or be preserved. The most the assignee had, at the time of the adjudication, was an executory contract to turn the wages over to him when they did come into existence in the future. East Lewisburg v. Marsh, 91 Pa. 96; Christian & Craft Grocery Co. v. Michael & Lyons, 121 Ala. 87, 25 So. 571, 77 Am. St. Rep. 30. This equity cannot be made to ripen into a lien upon the wages until they come into existence after the adjudication, and then only by enforcing against the bankrupt the obligations of a contract for whose enforcement the law denies all remedy, and from which the discharge releases the bankrupt of all liability. The upholding and enforcement of the claim of the creditor, under such circumstances, is not the preservation of a valid lien, which the bankruptcy statute saves, but the creation outright of a lien in violation of the provisions of that statute."

In the case of Levi v. Loevenhart & Co., supra, the Court of Appeals of Kentucky well said, with respect to an assignment order similar to that with which we are dealing here: "The order was valid only so long as the indebtedness to plaintiff remained unsatisfied. It is of no higher or greater dignity than the debt. It is merely an agreement that there shall be appropriated out of the debtor's wages a stipulated sum, to be credited on his debt until it is satisfied; i. e., paid or discharged. By his discharge in bankruptcy Metzler settled every debt that he owed— was entirely, completely, and finally relieved from any and all liability on account thereof; and as plaintiff's claim was set up and described in the proceeding in the bankruptcy court as a debt owing by Metzler, it was likewise canceled, satisfied, and settled, and, being settled, the conditions of the order were fully satisfied, and appellee relieved from all liability thereunder."

■ Coming to the question of jurisdiction, we entertain no doubt as to the power of the court below to grant the relief prayed. The Bankruptcy Act § 17 expressly provides that, with certain specified exceptions, a discharge in bankruptcy shall release a bankrupt from all of his provable debts. 11 USCA § 35. And as said by the Supreme Court in Chicago, B. & Q. R. R. v. Hall, 229 U. S. 511, 515,

33 S. Ct. 885, 886, 57 L. Ed. 1306, it was "intended not only to secure equality among creditors, but for the benefit of the debtor in discharging him from his liabilities and enabling him to start afresh with the property set apart to him as exempt." "The determination of the status of the honest and unfortunate debtor by his liberation from encumbrance on future exertion is matter of public concern," said Chief Justice Fuller in Hanover Nat. Bank v. Moyses, 186 U. S. 181, 192, 22 S. Ct. 857, 862, 46 L. Ed. 1113.

■■ In view of this purpose of the act and of the express provision that the bankrupt shall be released from all provable debts, it would be indeed a strange situation if the court vested with jurisdiction to enforce the act were without power to stay the hand of a creditor whose debt has been discharged by bankruptcy, but who nevertheless persists in harassing the bankrupt with efforts to collect it. It will not do to say that the bankrupt has an adequate remedy at law by pleading the discharge in case of suit, or by suing an employer if the latter withholds wages under an order such as that here. Such remedy is not adequate, because its assertion involves trouble, embarrassment, expense, and possible loss of employment. A laboring man who had availed himself of the benefits of the act would in many cases prefer to pay a debt discharged by bankruptcy rather than hazard his employment by bringing suit for wages withheld under notice like that with which we are dealing. And an employer in many cases would prefer to discharge an employee against whom a claim had been filed rather than engage in litigation with the claimant. The demand under an assignment order, in an effort to collect a debt discharged by bankruptcy, is nothing less than an attempt to circumvent the order discharging same and to deprive the bankrupt of the benefit of that order. It was to meet situations such as this that the bankruptcy court was vested with the general power under section 2, subsection 15 of the Bankruptcy Act (11 USCA § 11(15) to "make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title." As said by Judge Van Valkenburgh in the Swofford Bros. Dry Goods Co. Case (D. C.) 180 F. 549, 553: " * * * This section may be availed of to compel anything which ought to be done for, or to prevent anything which ought not to be done against the enforcement of the law; provided the court of bankruptcy otherwise has jurisdic-

860

tion of the person or the subject-matter. For such purposes the court has the plenary powers of a court of equity and can exercise the powers of such a court for the ascertainment and enforcement of the rights and equities of the various parties interested in the estate of the bankrupt company."

In the case of the Home Discount Company, supra, it was held directly that the court had the power exercised by the court below, and the discount company was fined for contempt of court because it failed to withdraw a notice of assignment filed with the employer of bankrupt. What was said by Judge Jones in that connection is pertinent here. Said he: "The filing of the assignment of the wages with the bankrupt's employer the day after the adjudication was an effort to embarrass the administration of the estate, and to force the bankrupt by the sore pressure caused by withholding the wages to pay an illegal demand, from which a discharge would free him. It was nothing more than an effort to starve him into abandonment of his right under the law, in defiance of the orders made to enforce those rights. If a court of bankruptcy has no power to prevent creditors from making such use of assignments of wages, it had as well shut its doors, and abandon all effort to vindicate the rights which the statutes commit to its protection. The law does not make such weaklings of courts of bankruptcy. They have ample power to protect the bankrupt in the enjoyment of all his rights, and to frustrate the efforts of those who seek to defeat the practical enjoyment of them."

In Progressive B. & L. Ass'n v. Hall, supra, this court held that the court of bankruptcy was without jurisdiction to enjoin action by a creditor residing in another district, but said that the bankrupt might obtain relief by an ancillary suit instituted in the district of the creditor's residence.

Some question is raised as to whether the complainant should not have proceeded by motion or petition in the original bankruptcy cause instead of by instituting an ancillary suit in equity. As defendant has its principal office in the district of the bankruptcy, it would seem that complainant might have pursued either course. There can be no question, however, that the filing of the ancillary suit was proper. See In re Swofford Bros. Dry Goods Co., supra, (D. C.) 180 F. 549, 554.

There was no error, and the decree of the court below will be affirmed.

Affirmed.