In the Matter of Michael E. BOREK, Bankrupt.

CAMDEN LIME COMPANY, Plaintiff,

v.

Michael E. BOREK, Defendant.

No. B-252-58.

United States District Court
D. New Jersey.

Jan. 7, 1960.

Jacob L. Furer, Camden, N. J., for application.

Joseph A. Maressa, Camden, N. J., opposed.

MADDEN, District Judge.

This is an application on the part of the alleged plaintiff, Camden Lime Company, for the issuance of a writ of capias ad satisfaciendum against the alleged defendant, Michael E. Borek. The facts briefly stated are, as follows:

On April 25, 1958, Michael E. Borek filed a voluntary petition in bankruptcy in this Court and was duly adjudicated a bankrupt, accordingly, the matter was referred to the Honorable William Lipkin, Referee in Bankruptcy of this Court. On June 25, 1958, specifications of objections to discharge were filed with the Referee by the alleged plaintiff, Camden Lime Company, making three main objections to the discharge of the bankrupt upon various allegations of fraud. Hearings were held by the Referee on September 8 and October 8, 1958. On October 9th the Honorable Referee filed an order declaring the claim of the Camden Lime Company nondischargeable because of the fraud of said bankrupt, Michael E. Borek, and on November 18, 1958, after notice and hearing, the Referee determined the amount of such claim to be $6,445.74.

On December 15, 1958, the Referee, without notice or hearing, filed an "Order amending orders that claim of Camden Lime Company is not dischargeable, fixing amount thereof and providing for entry of Judgment." In the preamble of the order is recited the gist of the orders of October 8 and November 18, 1958. It, thereafter, provides for the amendment of such orders to allow the entry of judgment in this Court in favor of the Camden Lime Company against the said Michael E. Borek, personally, in the sum of $6,445.74 and authorizes and directs the Clerk of the Court to docket the same with costs, which the Clerk did. No review was taken from any of said orders of the Referee.

On January 12, 1959, the Camden Lime Company, through counsel, applied to this Court for the issuance of a capias ad satisfaciendum and the same was placed upon the motion calendar for February 6, 1959. Thereafter, the Court experienced great difficulties with the bankrupt's counsel until finally on May 26, 1959, counsel for the bankrupt filed a brief herein raising for the first time the question of the jurisdiction of the Referee to enter judgment in this Court personally upon such claim.

The applicant, Camden Lime Company, has filed a reply brief urging the two main propositions that presently confront the Court, namely, "The referee had the authority to enter the judgment and the bankrupt cannot be heard at this late date to question the jurisdiction of the Court and attack the judgment."

Reviewing these points in the inverse order would seem appropriate here, thus: Can the Court now question the correctness of the judgment?

Rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

\* \* \* \* \* \*

"(4) The judgment is void; \* \* \* The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken."

This Court and the Referee's authority and jurisdiction are statutory and if the action of the Referee was beyond the scope of his statutory authority the judgment entered thereon would be void because this is the sole support of such judgment. It, therefore, seems necessary for the determination of the entire issue to see if such judgment was or was not void.

If then it is determined that the Court lacked jurisdiction of the subject matter even the requirement of a reasonable time cannot be given a literal interpretation for the mere passage of time cannot give validity to a void judgment.

Section 2 of the Bankruptcy Act (11 U.S.C.A. § 11) fixes the jurisdiction of the bankruptcy courts, as follows:

"(a) The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to—

\*   \*   \*   \*   \*   \*

"(15) Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, *as may be necessary for the enforcement of the provisions of this title:* Provided, however, That an injunction to restrain a court may be issued by the judge only;" (Emphasis supplied.)

A judicial interpretation of the purpose of this section of the Act was quite well discussed by the late Judge Parker in Seaboard Small Loan Corporation v. Ottinger, 4 Cir., 1931, 50 F.2d 856, at page 859, 77 A.L.R. 956, wherein he said:

"In view of this purpose of the act and of the express provision that the bankrupt shall be released from all provable debts, it would be indeed a strange situation if the court vested with jurisdiction to enforce the act were without power to stay the hand of a creditor whose debt has been discharged by bankruptcy, but who nevertheless persists in harassing the bankrupt with efforts to collect it. It will not do to say that the bankrupt has an adequate remedy at law by pleading the discharge in case of suit, or by suing an employer if the latter withholds wages under an order such as that here. Such remedy is not adequate, because its assertion involves trouble, embarrassment, expense, and possible loss of employment. A laboring man who had availed himself of the benefits of the act would in many cases prefer to pay a debt discharged by bankruptcy rather than hazard his employment by bringing suit for wages withheld under notice like that with which we are dealing. And an employer in many cases would prefer to discharge an employee against whom a claim had been filed rather than engage in litigation with the claimant. The demand under an assignment order, in an effort to collect a debt discharged by bankruptcy, is nothing less than an attempt to circumvent the order discharging same and to deprive the bankrupt of the benefit of that order. It was to meet situations such as this that the bankruptcy court was vested with the general power under section 2, subsection 15 of the Bankruptcy Act (11 U.S.C.A. § 11(15) to 'make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title.' As said by Judge Van Valkenburgh in the Swofford Bros. Dry Goods Co. Case (D.C.) 180 F. 549, 553: '\* \* \* This section may be availed of to compel anything which ought to be done for, or to prevent anything which ought not to be done against the enforcement of the law; provided the court of bankruptcy otherwise has jurisdiction of the person or the subject-matter. For such purposes the court has the plenary powers of a court of equity and can exercise the powers of such a court for the ascertainment and enforcement of the rights and equities of the various parties interested in the estate of the bankrupt company.'

"In the case of the Home Discount Company, supra [D.C., 147 F. 538], it was held directly that

the court had the power exercised by the court below, and the discount company was fined for contempt of court because it failed to withdraw a notice of assignment filed with the employer of bankrupt. What was said by Judge Jones in that connection is pertinent here. Said he: 'The filing of the assignment of the wages with the bankrupt's employer the day after the adjudication was an effort to embarrass the administration of the estate, and to force the bankrupt by the sore pressure caused by withholding the wages to pay an illegal demand, from which a discharge would free him. It was nothing more than an effort to starve him into abandonment of his right under the law, in defiance of the orders made to enforce those rights. If a court of bankruptcy has no power to prevent creditors from making such use of assignments of wages, it had as well shut its doors, and abandon all effort to vindicate the rights which the statutes commit to its protection. The law does not make such weaklings of courts of bankruptcy. They have ample power to protect the bankrupt in the enjoyment of all his rights, and to frustrate the efforts of those who seek to defeat the practical enjoyment of them.'

"In Progressive Building & Loan Co. v. Hall, supra [4 Cir., 220 F. 45], this court held that the court of bankruptcy was without jurisdiction to enjoin action by a creditor residing in another district, but said that the bankrupt might obtain relief by an ancillary suit instituted in the district of the creditor's residence.

"Some question is raised as to whether the complainant should not have proceeded by motion or petition in the original bankruptcy cause instead of by instituting an ancillary suit in equity. As defendant has its principal office in the district of the bankruptcy, it would seem that complainant might have pursued either course. There can be no question, however, that the filing of the ancillary suit was proper. See In re Swofford Bros. Dry Goods Co., supra, D.C., 180 F. 549, 554."

In Thummess v. Von Hoffman, 3 Cir., 1940, 109 F.2d 293, 294:

"The trustee in bankruptcy applied to the referee for an order on the bankrupt requiring him to pay over to the trustee a portion of the income which the bankrupt receives from the trust estate of his mother. The affidavit which the trustee filed with the referee for such purpose prayed 'that this Court make an order requiring the bankrupt to show cause why he should not be ordered to make payments at stated periods, in instalments and upon such terms as the Court may direct, out of his said income on account of his indebtedness as more particularly set forth in his schedules in bankruptcy filed herein.' The referee granted the trustee an order on the bankrupt to show cause, as prayed for."

After hearing, the Referee dismissed the order to show cause and upon petition for review, Chief Judge Forman of this Court, being of the opinion "that the Trustee in Bankruptcy must pursue the rights to which he deems himself entitled in such plenary action or proceeding as may be authorized by law," affirmed the action of the Referee and the Court of Appeals affirmed Judge Forman's holding.

The application in that case would not seem as drastic as the action taken here in the entry of a personal judgment against the bankrupt, and yet Judge Forman felt that there was no jurisdiction to act in a summary way and that a plenary action was needed.

The learned Referee herein relies heavily upon In re Petroleum Conversion Corporation, D.C.Del.1951, 99 F.Supp.

899, affirmed 3 Cir., 196 F.2d 728, to support the jurisdiction of the Bankruptcy Court.[1]

In that matter an alleged creditor of the bankrupt estate filed claim against the estate before the Referee and the Trustee asserted a counterclaim and set-off against the creditor and the matter was heard by the Referee. No objection to the Referee's jurisdiction or to the summary proceeding was made at the hearing before the Referee and the Referee found against the claimant and for the Trustee on the counterclaim. For the first time, upon review before the District Court, the claimant raised the jurisdictional question. The District Court, Leahy, J., held that the claimant had submitted to the Referee's jurisdiction, that the entry of judgment on the counterclaim was necessary and authorized under the section of the Statute, 11 U.S.C.A. § 11, sub. a(15), to "Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this title," and, consequently the judgment issued by the Referee was valid and subsisting. This position was sustained in a per curiam opinion by the Court of Appeals of the Third Circuit.

It is felt by this Court that there is a clear distinction between In re Petroleum Conversion Corporation and the case at bar which we will attempt to set forth, as follows:

■ Here, as there, the individual has submitted to the jurisdiction of the Court and it is felt that the Court has, to some degree, a measure of jurisdiction over the person of the bankrupt. However, it is felt that in the instant case the Referee did not have jurisdiction over the particular subject matter, namely, the entry of an individual judgment against the bankrupt upon the claim of a creditor. It is the view of the Court that this judgment in no wise is necessary for the orderly administration of the bankrupt estate and this, as the Court interprets it, is the limited power granted to the Referee under the Act, supra. The Referee holding the debt nondischargeable and entering judgment against the individual bankrupt in no way aids the administration of the bankrupt's estate nor is it necessary for the enforcement of the provisions of the Bankruptcy Act but only aids the individual creditor in pursuing his individual rights against the bankrupt.

■ It is true, as seen from the foregoing discussion, that the Bankruptcy Court may hold a debt dischargeable where such unusual and compelling circumstances exist that the bankrupt is inadequately protected by his remedy in a non-bankruptcy tribunal. However, the exercise of this ancillary jurisdiction is strictly limited to situations where the bankrupt has inadequate remedy in a non-bankruptcy court and is not to be interpreted as general jurisdiction to determine the dischargeability of claims.

Under the facts of this case there was no mention of inadequate remedy in a non-bankruptcy court and here we have the creditor asking to have the debt held nondischargeable rather than the bankrupt seeking relief.

This feeling on the part of the Court is strengthened by the fact that there has been an Act introduced in the 86th Congress and passed by the House of Representatives on September 7, 1959, and presently pending before the Senate known as House Resolution 4150 entitled, "An Act to amend the Bankruptcy Act to authorize courts of bankruptcy to determine the dischargeability or non-dischargeability of provable debts." This Act supplements Section 11 of Title 11 U.S.C.A., specifically sub-section a, pertaining to the powers of the Referees and giving them authority to determine the dischargeability of proven debts.

"Be it enacted by the Senate and House of Representatives of the

1. For a more recent application of this principle see Continental Casualty Company v. White, 4 Cir., 1959, 269 F.2d 213.

United States of America in Congress assembled, That subsection a of section 2 of the Bankruptcy Act, as amended (11 U.S.C. § 11, sub. a), is amended by adding at the end thereof the following:

"(22) Upon application of the bankrupt and the creditor concerned determine the dischargeability or nondischargeability of all provable debts. If a case is reopened solely for the purpose of determining such dischargeability or nondischargeability, no additional filing fees shall be collected."

■ Of course it is not complete logic to say that because Congress is considering giving the authority to the Referees that they do not now have it, but one can infer that if it was felt by the legislative body that the Referees under the present legislation had authority to declare a debt dischargeable or nondischargeable there would be no need for such pending legislation. This just buttresses the thinking of the writer that presently the Referees, at the very least, do not have the authority to enter a personal judgment in favor of a creditor filing the claim which the Referee has found to be nondischargeable.

No diversity of jurisdiction exists, the jurisdictional amount, i. e., $10,000, exclusive of interest and costs, is not involved, therefore, this Court could not entertain a plenary action on the claim of the alleged plaintiff.

No cases have been cited and this Court has been unable to find any case where the entry of such a judgment as here has received the approval of a court, either appellate or district.

To the contrary it has been held in Re Anthony, D.C.E.D.Ill.1941, 42 F.Supp. 312, at page 316:

"* * * The bankruptcy court can not afford the creditor complete relief but only partial relief at the best. It cannot carry through and render a judgment upon a creditor's unreleased claim upon which execution may issue against the bankrupt's after-acquired assets. To give such partial relief would in no measure serve to promote the purposes of the Act or the policy therein established. If it had been intended that the bankruptcy court must render such partial relief to a creditor under such circumstances the Act would have so provided and this it fails to do."

In this light the Court feels constrained to limit the jurisdiction as expressed by the statute and not to enlarge it to include such vast summary powers. To that end, the Court feels compelled to hold that the learned Referee was without jurisdiction to enter such a judgment and it is void and of no effect, and will be stricken from the record of this Court.

This holding, striking the judgment, will make unnecessary passing upon the merits of the application for the issuance of a writ of capias ad satisfaciendum herein, and such application will be denied.

Counsel will prepare an appropriate order.