In the Matter of William T. JOHNSON and Grace B. Johnson, Bankrupts.

Nos. B–344–60, B–351–60.

United States District Court
D. New Jersey.

Oct. 4, 1962.

Jerome Alper, Alper & Alper, Newark, N. J., for petitioner; William A. Ancier, Newark, N. J., of counsel.

William V. Eisenberg, Camden, N. J., for respondents.

MADDEN, Chief Judge.

This matter is before the Court on a Petition for Review filed by the New Jersey Bank and Trust Company, a judgment-creditor of the above named bankrupts, respondents herein. The petitioner (hereinafter referred to as the "bank") seeks a review of an Order of the Referee in Bankruptcy, dated September 19, 1961, which restrains the bank from proceeding with the enforcement of the judgment it recovered against the respondents in the Law Division of the Superior Court of New Jersey prior to bankruptcy.

Briefly, the facts are as follows:

On May 20, 1955, the respondents, William T. Johnson and Grace B. Johnson, executed and delivered a promissory

note in the amount of *$2,860.20* to the *Atlas Building Corp.* for a *home improvement loan.* The note was payable at the Passaic Clifton National Bank and Trust Company (now known as the New Jersey Bank and Trust Company, petitioner herein) in monthly installments of $47.67 for 60 months commencing on June 20, 1955. On January 31, 1957, the respondents executed and delivered a second note in the amount of *$329.52* to the *American Home Service Co., Inc.* also for a *home improvement loan,* which note was payable at the Passaic Clifton National Bank and Trust Company in monthly installments of $13.73 for 24 months commencing on April 5, 1957.

Shortly thereafter, the respondents became in default on both notes whereupon the bank instituted suit in the Law Division of the Superior Court of New Jersey. Service of the summons and complaint was made upon the respondents on September 24, 1957. The complaint consisted of four counts. On the first count, the bank sought recovery for money due in the sum of $344.75 on the note of January 31, 1957; on the second count, the bank sought recovery for money due in the sum of $1,936.22 on the note of May 20, 1955; on the third count, the bank alleged the respondents had made certain untrue representations to the bank in order to secure the monies loaned and sought recovery for legal services in the sum of $450.00 in addition to the aforementioned sums; and on the fourth count of the complaint, the bank alleged the respondents were the owners of certain land and building which they were about to sell and convey with intent to hinder, delay and defraud the bank in the recovery of its claim and in asserting its lien against the property for the monies loaned which were used in the construction and improvement of the property. The complaint contained a demand for a judgment for $3,000.00, costs, a judg-

ment in fraud, a lien upon the property and an injunction against the sale thereof.

The respondents, through counsel, filed an answer to the complaint wherein they admitted that the bank was a holder in due course of the notes but denied the remaining allegations of the complaint. Thereafter, the bank sent a notice, dated December 26, 1957, by certified mail, to the respondents advising them that it intended to apply on January 10, *1957* (sic), to the court:

"(a) To strike the answer to the first and second counts, upon the grounds that the same is sham and filed for the purpose of delay; and

"(b) For entry of judgment in fraud on the complaint filed herein.

"AND TAKE FURTHER NOTICE, that in support of said motion the following affidavit and the papers on record will be used." [1]

On the return date of the motion the respondents failed to appear and the court set down May 20, 1958, as the date the matter would be heard. On May 20, 1958, the bank appeared before the court and presented its proof in the matter as a result of which a judgment based in fraud was entered in favor of the bank and against the respondents in the sum of $2,080.97, together with interest from September 10, 1957 in the amount of $83.20, making a total of $2,164.17. The respondents were neither present nor represented at this hearing.

By letter, dated June 2, 1958, the bank's attorney advised the respondents that a judgment was entered against them but he did not indicate upon what grounds the judgment was based. On November 10, 1958, the respondents signed a stipulation whereby they acknowledged that the sum of $2,399.68 was due to the bank and they agreed to pay monthly sums on account thereof. The

---

1. The affidavit referred to in the notice was an affidavit of an officer of the bank setting forth that there was due to the bank the sum of $334.75 on the first count and $1,936.22 on the second count —a total of $2,270.97, less payment of $62.00 since commencement of suit, leaving a balance in the total sum of $2,208.97. The affidavit makes no reference to the count on misrepresentation or to the intended transfer of the property alleged in the fourth count of the complaint.

bank also agreed that upon payment in full it would reconvey to the respondents title to their home which it had theretofore purchased at a Sheriff's sale on November 6, 1958.

On May 20, 1960 and on May 23, 1960, the respondents, William T. Johnson and Grace B. Johnson, respectively, filed voluntary petitions in bankruptcy wherein the bank was listed as a creditor and given notice thereof. On September 16, 1960, the Referee in Bankruptcy entered orders discharging both respondents from all debts and claims which, by the Bankruptcy Act, are made provable against their estates except such debts as are, by said Act, excepted from the operation of a discharge in bankruptcy. The bank neither filed a claim with the Referee nor objected to the respondents' discharge, but, instead, pursued proceedings in the State Court for the enforcement and payment of its judgment.[2]

On May 19, 1961, the respondents filed a petition with the Referee in Bankruptcy for an order to show cause why the bank should not be restrained from pursuing state court proceedings to enforce its judgment and the respondents granted further relief that may be just and equitable. In their petition the respondents allege, inter alia, that they listed the judgment debt owing to the bank in the schedules of their bankruptcy petitions; that the bank had notice of the bankruptcy proceedings; that they were ultimately granted discharges in bankruptcy; that the judgment debt owing to the bank was discharged; and that the bank harassed them and continued to harass them after discharge.[3]

The Order to Show Cause was granted and a hearing thereon was held before the Referee in Bankruptcy on June 12, 1961.

At the hearing the bank objected to the jurisdiction of the Referee not only to hear the matter but to look behind the judgment of the state court and determine the dischargeability of the same.

The Referee, nevertheless, carefully inquired into the prior proceedings before the State Court, including the record and the transcript of the hearing, and into other facts relevant to the proceeding before him. As a result of this inquiry the Referee determined he had jurisdiction to hear the matter and to determine the dischargeability of the State Court judgment. In the Opinion of the Referee, dated September 15, 1961, it was ultimately concluded:

"I am satisfied that this court should exercise its authority to restrain action by the Bank under the judgment rendered against the bankrupts in the State Court and permit determination through this court as to whether the debt is one of a non-dischargeable nature under the provision of Section 17 of the Bankruptcy Act (11 U.S.C. 35). Local Loan Company v. Hunt, supra [292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230].

"The Bank may, if it believes it is the holder of such an obligation, file with this court a petition and order to show cause directed to the bankrupts why the debt to it should be declared not discharged, and the matter will be heard.

"An order may be entered restraining the Bank from any further action under its judgment against the bankrupts and granting the Bank 20 days from such an order to show cause as to the discharge-

---

2. The bank served on respondents a Motion for an Order to Make Payment Out of Income on Account of the Judgment, also caused execution to issue out of the Superior Court of New Jersey to the Sheriff of Atlantic County to levy on all property of the respondents in that county even though the estates of the respondents were at the time still under administration.

3. The respondents allege the bank has exerted a continued effort since the entry of the judgment to enforce payment thereof and that in addition to the state court enforcement proceedings the bank wrote a letter to the employer of the respondents informing said employer that a judgment for fraud was entered against the respondents.

ability of the said debt; and, the order shall further provide that in the event a petition and order to show cause is not filed within such time, then the restraint against further action by virtue of the judgment against the bankrupts shall become permanent." (page 10)

An order was entered on September 19, 1961, in conformity with the Opinion of the Referee but no further application was made by the bank until September 28, 1961, when the present Petition for Review was filed.

The effect of the Referee's Order was to restrain the bank from proceeding with the enforcement of the judgment in the State Court wherein the issue of dischargeability of the judgment might be determined, and have that issue determined by the Bankruptcy Court. For the latter purpose the Referee granted the bank 20 days within which to make an application for a hearing of that issue or the restraint was to become permanent.

■ The bank, in lieu of making a timely application to the Referee, filed the Petition for Review herein which this Court, if so disposed, could have dismissed as premature. Such action by this Court could hardly seem proper under the circumstances. First, it is clear from the Opinion of the Referee that the Order to be filed, and which was in fact filed, was a final determination in the absence of a timely application by the bank. Second, both parties to this review have treated, in their briefs and arguments, the adjudication of the Referee as a final determination of the issues involved. Third, the untimeliness of the application and the premature filing of the bank's petition was raised and questioned by this Court on oral argument, and as a result of this Court's reservation and concern, the bank, by a letter addressed to this Court (dated June 6, 1962, and filed on June 15, 1962), has specifically and expressly waived any rights to a further hearing before the Referee on the issues and has requested the matter be considered as if the 20 days for applica-

tion had lapsed. Lastly, the Referee implicitly expressed his view on the issue left open to the bank, namely, the dischargeability of the judgment, in the following language:

"From the facts presented to the State Court, I am satisfied that the entry of a judgment based on fraud was not justified and should not be permitted to stand so as to now haunt and vex the bankrupts." (Referee's Opinion, page 8.)

and:

"The judgment entered in the State Court as based upon fraud is declared to be a nullity." (Referee's Opinion, page 9.)

Thus, the Court has before it the two issues raised by the bank, to wit: Whether the Referee had jurisdiction to entertain, after entry of an order of discharge in bankruptcy, a petition by the respondents for an order restraining a judgment-creditor from proceeding with the enforcement of a State Court judgment obtained against the respondents prior to their adjudication of bankruptcy; and, assuming the Referee had such jurisdiction, whether in determining the propriety of issuing the restraint, the Referee should have gone behind the State Court judgment and the specific finding of fraud.

■ Ordinarily, when a creditor institutes proceedings to enforce an obligation against a bankrupt after discharge the Bankruptcy Court will leave to the court in which enforcement is sought the determination of dischargeability of the obligation and the enforcement or non-enforcement thereof, for normally, the bankrupt may plead his discharge in bankruptcy and the court will accord the discharge its proper effect under the provisions of the Bankruptcy Act. State Courts have concurrent jurisdiction with the Bankruptcy Courts to determine the dischargeability of an obligation under the Bankruptcy Act. Should a State Court fail to apply correctly the provisions of the Act or commit error, the aggrieved litigant has recourse by pur-

suing the appropriate appellate proceeding but not by instituting ancillary proceedings in the Court of Bankruptcy. Teubert v. Kessler, 296 F. 472 (3rd Cir., 1924) and Watts v. Ellithorpe, 135 F.2d 1 (1st Cir., 1943).

█ It is, however, well settled that a Court of Bankruptcy has, in furtherance of its general jurisdiction, and to carry out and effectuate the provisions of the Bankruptcy Act, the power and jurisdiction to protect the bankrupt in his discharge rights after as well as prior to discharge. This paramount jurisdiction does not rest on Section 11, sub. a of the Bankruptcy Act (11 U.S.C.A. § 29) but is exclusively federal in character and inherently equitable in nature and *may* be exercised by the Bankruptcy Court *after discharge* where unusual circumstances of hardship or embarrassment are found to exist. Thus, it is a broad and equitable jurisdiction possessed by a Court of Bankruptcy which may be invoked in the sound discretion of the Referee in Bankruptcy in an appropriate instance.

█ This jurisdiction may be invoked in an ancillary proceeding in an instance where, after a discharge in bankruptcy, a judgment-creditor seeks to enforce either a discharged or dischargeable judgment debt against the bankrupt in a State Court proceeding. In exercising this jurisdiction the Referee may determine the dischargeability of the judgment debt sought to be enforced, if the same has not been previously determined, and, if dischargeable, the Referee may enjoin the enforcement of the judgment in the State Court. Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L. Ed. 1230 (1934); Seaboard Small Loan Co. v. Ottinger, 50 F.2d 856 (4th Cir., 1931); State Finance Co. v. Morrow, 216 F.2d 676 (10th Cir., 1954); White v. Public Loan Corporation, 247 F.2d 601 (8th Cir., 1957); Personal Industrial Loan Corporation v. Forgay, 240 F.2d 18 (10th Cir., 1956); Holmes v. Rowe, 97 F.2d 537 (9th Cir., 1938) and In re Caldwell, 33 F.Supp. 631 (D.C.N.D. Ga., 1940), aff. 115 F.2d 189, 133 A.L.R. 432,

cert den. 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523.

█ Jurisdiction may also be invoked by ancillary proceedings where a judgment-creditor seeks to enforce in a State Court proceeding a judgment which is void for lack of jurisdiction or a judgment which was obtained through extrinsic or collateral fraud. Beneficial Loan Co. v. Noble, 129 F.2d 425 (10th Cir., 1942). See, also, Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); Heiser v. Woodruff, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970 (1946); Margolis v. Nazareth Fair Grounds and Farmers Market, 249 F.2d 221 (2nd Cir., 1957); and United States Rubber Company v. Poage, 297 F.2d 670 (5th Cir., 1962).

█ The exercise of this paramount jurisdiction is limited, however, to instances where unusual circumstances of hardship or embarrassment are found to exist. Since the decision of the Supreme Court in Local Loan Co. v. Hunt, supra, the unusual circumstances justifying the exercise of this paramount jurisdiction has, generally, been determined on the facts of each particular case. See In re Caldwell, supra, and Remington On Bankruptcy, Sixth Ed., Vol. 8, Sec. 3262, P. 100. To indulge in enumeration herein of the factual variations which constitute such unusual circumstances would, in the opinion of this Court, serve no useful purpose but to expatiate this opinion.

The facts in the instant case disclose that the judgment which was rendered against the respondents was entered prior to bankruptcy; that although the respondents filed an answer in that action wherein judgment was obtained against them, they did not appear pro se or through counsel on the return day of the motion for entry of judgment or the subsequent date of the hearing thereon; that they had no notice of the judgment or the grounds upon which it was entered until sometime thereafter; that the respondents are small debtors and wage earners with modest income; that they filed voluntary petitions in bank-

ruptcy listing in their schedules the judgment which the bank seeks to enforce against them; that the bank made no objection to their discharge or otherwise participated in the bankruptcy proceedings despite notice thereof; that the bank harrassed the respondents at their place of employment, filed pleadings seeking payment from them out of their income and issued execution against their property in Atlantic County; that the respondents lost their home in Burlington County; and that they can ill afford the cost and expense of State Court proceedings and the endangerment of losing their employment; and finally, that they reside some distance from the venue of the court where the bank does business.

The opinion of the Referee discloses the exercise of this paramount jurisdiction in the instant matter in reliance on the somewhat similar cases of Personal Industrial Loan Corporation v. Forgay, supra, and Seaboard Small Loan Corporation v. Ottinger, supra, which cases were quoted in part in the Referee's Opinion, thus:

> "The Supreme Court in the Hunt case and this Court in the Morrow case point out that a bankruptcy court in considering whether it should exercise its equitable discretion should give special attention to small debtors to the end that they are not harrassed by being dragged through expensive state court proceedings. It is urged here that appellee had not exhausted his remedy in the state courts by failing to appeal from the judgment in the city court overruling its motion to vacate its judgment. Such a proceeding would entail delay and costs which the discharged debtor could ill afford and, as pointed out in the Hunt case, would in a large part deny him the benefits of an adjudication by the bankruptcy court." Personal Industrial Loan Corporation v. Forgay, 240 F.2d 18 at pp. 20 and 21.

and:

> "It will not do to say that the bankrupt has an adequate remedy at law by pleading the discharge in case of suit, or by suing an employer if the latter withholds wages under an order such as that here. Such remedy is not adequate, because its assertion involves trouble, embarrassment, expense, and possible loss of employment." Seaboard Small Loan Corporation v. Ottinger, 50 F.2d 856, at p. 859.

■ Although the factual circumstances in the two cases quoted herein are not entirely on "all fours" with the facts of this case, this Court is of the opinion that the facts are sufficiently similar and the circumstances of this case are such that it cannot be said that the exercise of the equitable discretion of the Referee in invoking this paramount jurisdiction to entertain this matter was not warranted or is an abuse of his discretion.

■ In entertaining a petition such as that filed by the respondents in the instant matter, the issue of the dischargeability of the judgment which the respondents seek to restrain the bank from enforcing becomes an essential issue. Were the issue of dischargeability of the judgment under the Bankruptcy Act previously determined by a court of competent jurisdiction, the issue would be res judicata and the Referee would have had no jurisdiction to proceed further and issue a restraining order against enforcement of the judgment. The Bankruptcy Court is precluded from determining the issue of dischargeability of the obligation sought to be enforced in any subsequent ancillary proceeding once the issue has been previously determined in a state court of competent jurisdiction. In re Devereaux, 76 F.2d 522 (2nd Cir., 1935) and In re Epstein, 48 F.Supp. 436 (D.C.S.D.N.Y., 1942).

The issue of dischargeability of the judgment in question was never previously determined. The judgment was obtained against the respondents prior to bankruptcy and discharge and hence could not have been raised in the original state court proceedings wherein the judg-

ment was obtained. The issue was not raised in the enforcement proceedings which the bankrupts herein seek to restrain the bank from pursuing since these proceedings had not reached that point when the present ancillary application was made to the Referee. Thus, the issue of dischargeability was ripe for the Referee's determination.

In determining whether a particular debt is excepted from a discharge in bankruptcy under Section 17, sub. a(2) of the Bankruptcy Act (11 U.S.C.A. § 35, sub. a(2)) the controlling factor is the actual character of the liability.[4] This, Congress made clear when, by amendment to the Bankruptcy Act in 1903, it substituted the word "liabilities" for "judgments in actions for frauds". This amendment actually broadened the exception by making the issue of non-dischargeability depend upon the character of the liability, instead of the form of action.

Normally, the determination of dischargeability of a judgment requires inquiry behind the judgment to determine the essential nature of the liability and the fact that a claim or debt has been reduced to judgment does not prevent such inquiry. As stated in the case of Harrison v. Donnelly, 153 F.2d 588 at page 590 (8th Cir., 1946):

> "When a court of bankruptcy elects to exercise its equitable jurisdiction (as was done in this case) to determine the dischargeability of a particular debt which had been reduced to judgment prior to the adjudication in bankruptcy, the nature and character of the debt must be determined from the record of the proceedings in the court which entered the judgment."

4. "§ 35. Debts not affected by a discharge
"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false repre-

See Collier on Bankruptcy, Fourteenth Edition, Vol. 1, Sec. 17.16.

There is in the instant case, however, an important fact in the absence of which this Court feels it could have rendered its decision on review with much less difficulty. This fact is the prior determination by the Law Division of the Superior Court of New Jersey that the judgment in question is based on fraud. It is clear that the issue of fraud was before and determined by that court. The allegations of the complaint asserted fraud, although denied in the answer of the respondents. The notice of motion served upon the respondents advised them that a judgment based on fraud would be sought on the return day of the motion. The issue of fraud was raised at the hearing and the evidence relating thereto and in support thereof was adduced. Finally the court rendered its judgment with the specific finding that it was based on fraud. Does this not indicate that the nature of the liability has been thus determined, and would it not seem that that particular issue is now res judicata?

The Referee, despite this fact, proceeded to look behind the judgment and the State Court's specific finding of fraud by examining not only the record but the evidence and testimony adduced at the State Court hearing, and concluded the judgment for fraud was not justified and declared it to be a nullity. This no doubt was a primary factor in the Referee's determination to issue the restraining order against the bank. In thus issuing a restraint this Court is of the opinion that the Referee exceeded his jurisdiction.

In this regard, the Court is constrained to make the observation that unquestionably the Referee was moved to exer-

sentations, or for obtaining money or property on credit or obtaining an extension of renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, * * *."

cise jurisdiction by what he considered was the apparent inequity of this matter; to wit: the determination by the State Court that the judgment against the respondents was based on fraud. If this Court were sitting in review of the State Court proceedings and the judgment rendered therein, it is extremely doubtful that this Court would arrive at the same decision as that of the State Court.

The Referee stated that from the facts presented to the State Court he was satisfied that a judgment for fraud as rendered was not justified and with this conclusion, this Court is in accord. The loans made by the bank were advanced through home improvements companies as home improvement loans and were not made directly to the respondents as personal loans as indicated on page 2 of the transcript of the testimony presented at the hearing before the State Court on May 20, 1958. This was apparent on the face of the notes in question and before the State Court. There is nothing in the transcript to indicate that in making the loans, the bank relied on or was mislead by the alleged untrue representations to its detriment, or that the respondents intended to defraud the bank. The only testimony in this regard was a question propounded by the bank's attorney to the officer of the bank who testified, thus:

"Now, as the result of the defendants' failure to disclose these various obligations on their application for these loans, was the bank defrauded?"

and the answer:

"Yes."

This is a conclusion and finding of fact which was solely within the province of the court to make and should have been based on fact testimony. It is clear that, in the main, all of the alleged undisclosed indebtedness of the respondents was incurred *after* the issuance of the larger loan by the bank and there was no testimony as to the value and extent of the assets of the respondents or testimony as to the execution of the application for

the loans or execution of the notes. This, coupled with the fact that the respondents were not present at the hearing, although served with notice of the original return day of the motion for judgment but not the continued or postponed date thereof, and the fact that they were allegedly misled as to the basis on which the judgment was requested certainly gives cause to question the propriety of the judgment based on fraud. It is also undisclosed in the record whether the respondents were, throughout the entire course of the State Court proceedings, represented by counsel or whether counsel withdrew therefrom after filing the answer on behalf of the respondents.

Nevertheless, despite the Referee's conclusion and this Court's feeling regarding the merits of the State Court judgment, this Court has no authority to declare that judgment a nullity on that ground and hence enjoin enforcement thereof. In this connection, the language contained in Beneficial Loan Co. v. Noble, 129 F.2d 425, at page 427, is appropriate:

"Here, however, the bankruptcy court did not undertake to exercise its jurisdiction with respect to the allowance, rejection, or subordination of a claim, but undertook to inquire into the merits of the cause of action for fraud upon which the state court judgment was predicated and to enjoin the enforcement of that judgment on the grounds that the claim of fraud was without legal validity. That is to say, it undertook to relitigate the matters which had been heard and determined by the state court. This, we think, it was precluded from doing under the doctrine of res judicata."

This Court feels as indicated in the case just cited that although a Bankruptcy Court may enjoin the prosecution of a State Court action when necessary to effectuate its orders of adjudication and discharge, in an instance where the State Court proceedings has gone to judgment, the Bankruptcy Court may not review the matter heard and determined by the State Court and reach a contrary

conclusion and enjoin the enforcement of the judgment.

 If the State Court committed error in rendering its judgment on the basis of fraud, it cannot be corrected by a Court of Bankruptcy for the proper recourse is by appeal. The judgment of a State Court must be given its full effect under the principles of "full faith and credit" and comity between the Federal and State Courts.

In the case of Heiser v. Woodruff, 327 U.S. 726, at pages 736 and 737, 66 S.Ct. 853, at pages 857 and 858 it was stated:

"Undoubtedly, since the Bankruptcy Act authorizes a proof of claim based on a judgment, such a proof may be assailed in the bankruptcy court on the ground that the purported judgment is not a judgment because of want of jurisdiction of the court which rendered it over the persons of the parties or the subject matter of the suit, or because it was procured by fraud of a party. * * * *But it is quite another matter to say that the bankruptcy court may reexamine the issues determined by the judgment itself.* It has, from an early date, been held to the contrary. * * * Nor can an attack be sustained on a judgment allegedly procured by fraudulent representations of the plaintiff, when the charge of fraud has been rejected in previous litigations by the parties to the suit in which the judgment was rendered, or their representatives. * * *

"*Neither Pepper v. Litton, supra, on which respondents chiefly rely, nor the other cases which they cite, sustain the contention that the bankruptcy court, in passing on the validity of creditors' claims, may disregard the principle of res judicata.*" (Emphasis supplied.)

This Court is, therefore, of the opinion that where the nature of a liability is in issue and has been previously determined by a court of competent jurisdiction, as here, under the principle of res judicata, the issue so determined is established conclusively. See Ehnes v. Generazzo, 19 N.J.Misc. 393, 20 A.2d 513 (Essex County Court of Common Pleas, 1941), and also 8 C.J.S. Bankruptcy § 573, page 1522, which states:

"Where it does not appear from the judgment itself just what the nature of the action was, whether it was obtained in an action for fraud such as will bring it within the exception herein will be determined from an inspection of the entire record on which the judgment was based. Beyond the record, however, the court may not go; hence, where the judgment recites that the cause of action was based on an account, the judgment creditor cannot go behind the judgment and prove that the transaction out of which it arose was fraudulent, so as to avoid the effect of a discharge."

And Collier On Bankruptcy, Vol. 1, § 17.16, at page 1623:

"In general the reduction of a claim to a judgment does not affect its nature as a non-dischargeable debt, dischargeability being dependent upon the nature of the claim behind the judgment. Where, however, a liability has been prosecuted to judgment, the record is usually held decisive as to the character of the claim upon which judgment is founded, and cannot be affected by the introduction of parol evidence except in the case of ambiguity. In order that a judgment based upon a fraudulent representation may be excepted from the operation of a discharge, the record in the action must show that fraud and deceit were the 'gist' and 'gravamen' of the action."

 In the instant case, the judgment of the State Court clearly was rendered on the specific finding of fraud, there is no ambiguity of the judgment and an examination of the pleadings and issue indicate that fraud was the "gist" and "gravamen" of the action. Thus, it is felt that in the absence of the judgment

being void for a want of jurisdiction or having been obtained by extrinsic or collateral fraud, enforcement of the judgment in the State Court should not have been restrained on the improper grounds that the judgment was not justified or a nullity. As previously stated, if the State Court judgment for fraud was not supported by the evidence, or some element of fraud was lacking, or that Court committed error, the appropriate State Court proceedings should have been pursued.

The decision of the Referee is hereby reversed but the restraint to continue for a period of thirty (30) days to allow the respondents to pursue whatever appropriate State Court remedies are available to them.