**In the Matter of Donald A. ROMEO, Debtor.**

**Donald A. ROMEO, Plaintiff,**

**v.**

**Anne ROMEO, Defendant.**

**Bankruptcy No. 79–02971.**

United States Bankruptcy Court, D. New Jersey.

May 13, 1981.

Herbert Blaustein, Union, N. J. by Howard Katz, Union, N. J., for plaintiff/debtor.

Fontanella, Shashaty, Harris & Lalomia, Paterson, N. J. by Allan M. Harris, Paterson, N. J., for defendant.

## OPINION

D. JOSEPH DeVITO, Bankruptcy Judge.

Plaintiff Donald Romeo seeks to restrain the attempts of defendant Anne Romeo, his former wife, to force plaintiff to pay certain debts allegedly discharged in bankruptcy, including legal fees she incurred in the process. The facts, generally undisputed, may be summarized as follows:

1. The marriage of the plaintiff debtor and defendant was dissolved by a final judgment of divorce entered in the Superior Court of New Jersey, Chancery Division, Passaic County, on January 29, 1980, granted to the defendant therein (the defendant here) on her counterclaim on the grounds of extreme cruelty. Four children were born to the marriage.

2. The divorce judgment expressly incorporated the terms of an agreement between the parties which, in pertinent part, required each to assume 50 per cent of specified unpaid joint obligations, some seven in number, with the total represented as not exceeding $7,000; that the defendant waive any right or claim to alimony, or any other support from the plaintiff; that the plaintiff be required to pay to the defendant the sum of $18.75 per week as and for each of the minor children of the marriage. In addition, the judgment directed the parties to carry out the above noted terms, recited that the court had taken no testimony, had made no findings of fact concerning the financial circumstances of the parties and their ability to perform the obligations of the Order, and awarded the defendant's attorney a counsel fee of $1,330, plus costs.

3. On November 29, 1979 the plaintiff husband filed a voluntary petition in bankruptcy, listing in the schedules annexed all of the debts listed in the divorce judgment, with the exception of New Jersey Bank. In addition, the defendant wife and Allan Harris, Esq. were listed, in each case amount unknown.

4. Objections to the dischargeability of the debts in question were not filed in the bankruptcy proceedings.

5. Complaining of plaintiff's failure to pay New Jersey Bank, Household Finance Company and defendant's counsel fees, Anne Romeo obtained an Order of the Superior Court of New Jersey, dated July 18, 1980, which found that the aforementioned debts, including the counsel fees, were nondischargeable and ordered the plaintiff to pay those items, together with a counsel fee of $1,050 for services rendered re the application then considered and services rendered in the litigation brought against the defendant Anne Romeo in Passaic County District Court by Household Finance and New Jersey Bank.

6. Upon his continuing failure to comply, the defendant again moved on September 19, 1980, requesting that plaintiff be confined until compliance.

Plaintiff, contending that the state court Order of July 18, 1980 does not constitute a bar on the bankruptcy court, asserts that in the state court divorce hearing the judgment was entered without findings of fact or an indication of the court's legal rationale; further, that neither proofs nor briefs on applicable bankruptcy law were submitted. Plaintiff argues further that, since the discharge order granted to the debtor provides that

> any judgment . . . obtained in any court other than this court is null and void as a determination of the personal liability of the debtor with respect to . . . (a) debts dischargeable under 11 U.S.C. 523,

this Court should reject the state court determination and decide and hear the case on the merits *de novo*. In support of his position, plaintiff refers specifically to § 523[a][5] of the Bankruptcy Code, which provides that debts to a spouse, former spouse or child, for alimony, maintenance and support are nondischargeable, provided the liability is actually in the nature of alimony, maintenance or support.

Referring to the legislative history, plaintiff asserts that the above provisions are limited to alimony, maintenance, or support owed *directly to a spouse or defendant*; that the defendant cannot and does not allege that subject debts are owed directly to her.

## DISCUSSION

The precise issue here centers upon the state court's determination of the nondischargeability of subject debts, specifically those owing to New Jersey Bank, Household Finance Company and the counsel fees awarded in the matrimonial action to defendant's counsel, and whether such finding is binding upon this Court.

■ In considering the provision of the July 18, 1980 state court Order finding plaintiff's debts, including counsel fees, to be nondischargeable, this Court readily declares that it has exclusive jurisdiction over the determination of dischargeability questions within sections 523[a][2], [4] and [6] of the Bankruptcy Reform Act of 1978, and concurrent jurisdiction with the appropriate local court over other types of debts. 11 U.S.C. § 523[c]; 3 Collier on Bankruptcy (hereinafter cited as *Collier*) ¶ 523.15 at 523–112 to –113 (15th ed. 1980); 1979 Ann. Surv.Bankr.L. (ed. W. Norton, Jr.) 295–96. Citing 28 U.S.C. § 1471[b], *added by* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 241, 92 Stat. 2549, 2668, *Collier, supra*, at 523–113, notes: "Such claims in Section 523[a][5] are, therefore, of the type over which the Bankruptcy Court has concurrent jurisdiction and not exclusive jurisdiction to determine their dischargeable character." See also *In re Peterman*, 5 B.R. 687, 690 (Bkrtcy.E.D.Pa.1980).

The foregoing, however, is not entirely dispositive of the issue here. In addressing the applicability of the doctrines of res judicata or collateral estoppel, we turn to those requirements that must be met before the effect of those doctrines can be given to a prior action. *See, e.g. Brown v. Felsen*, 442 U.S. 127, 129, 99 S.Ct. 2205, 2208, 60 L.Ed.2d 767 (1979); *In re Ross*, 602 F.2d 604, 607–08 (3d Cir. 1979); *In re McMillan*, 579 F.2d 289, 291–92 (3d Cir. 1978); *Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir. 1976); *In re Peterman, supra*, at 691 & n.22; *Sea-Land Svcs. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), *reh. denied*, 415 U.S. 986, 94 S.Ct. 1582, 39 L.Ed.2d 883 (1974); *Partmar Corp. v. Paramount Pictures Theatres Corp.*, 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532 (1954), *reh. denied* 347 U.S. 931, 74 S.Ct. 527, 98 L.Ed. 1083 (1954); *Miller v. Poretsky*, 595 F.2d 780 (D.C.Cir. 1978); *Sartin v. Commissioner of Public Safety*, 535 F.2d 430 (8th Cir. 1976); *Robinson-Shore Dev. Co. v. Gallagher*, 26 N.J. 59, 138 A.2d 726 (1958).

■ A critical consideration in the applicability of the foregoing doctrines is motivated by a proper concern for every litigant's right to a full and fair day in court, specifically that they be given "ample opportunity" to present their respective side of the issue sought to be precluded in the subsequent action. *See Township of Hopewell v. Volpe*, 446 F.2d 167, 170 (3d Cir. 1971). However, determination of the applicability of res judicata or collateral estoppel must follow a study of the entire record of the proceedings. As stated in *Robinson-Shore, supra*, at 68, the New Jersey Supreme Court observed:

.... the plea of collateral estoppel cannot be decided *in vacuo*, but must be predicated upon a careful study of the entire record of the proceedings in order to ascertain the issues projected therein and the applicable legal principles involved.

■ It is undisputed that the state court Order of July 18, 1980 was issued without a full hearing; that briefs were neither requested or submitted; that the presiding judge expressly made no findings of fact; that the state court judgment merely states in conclusory language that the within debts are nondischargeable. Because of the above, the court's basis for its finding of nondischargeability is indiscernible. Under the foregoing circumstances, this Court has serious doubts concerning the legal efficacy of the defendant debtor's supposed day in court. Upon such an incomplete record, this Court will not assume that the issues sought to be precluded herein were fully litigated, as case law demands. Moreover, and quite apart from other considerations, this Court is invested with the paramount equitable powers to inquire into the validity of any claim asserted against a debtor, notwithstanding the general applicability of

res judicata or collateral estoppel to prior valid judgments. *See Pepper v. Litton*, 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); *United States v. Harrington*, 269 F.2d 719, 725 (4th Cir. 1959); *Margolis v. Nazareth Fair Grounds & Farmers Mkt.*, 249 F.2d 221, 223–24 (2d Cir. 1957); *In re Albertini Ford, Inc.*, 22 C.B.C. 678, 680 (Bankr.Ct. E.D.Pa.1980); *In re Ashley*, 5 B.R. 262, 264 (Bkrtcy.E.D.Tenn.1980); *In re Bus Stop, Inc.*, 3 B.R. 26 (Bkrtcy.S.D.Fla.1980); *In re Cawthorn*, 1 B.R. 267 (Bkrtcy.W.D.Va.1979).

Defendant's counsel erroneously relies on the holding found in *In re Johnson*, 211 F.Supp. 337 (D.N.J.1962), wherein the District Court, applying the doctrine of res judicata, held that the bankruptcy court was estopped by a state court "judgment in fraud" from inquiring into the nature of the liability. That decision was vacated by the Third Circuit in *In re Johnson*, 323 F.2d 574 (3d Cir. 1963) for reasons compatible with those set forth herein.

■ It is well settled that, with respect to a § 523[a][5] exception to discharge, bankruptcy law, not state law, determines whether an obligation in question is in the nature of alimony, maintenance, or support. *In re Henry*, 5 B.R. 342, 343 (Bkrtcy.M.D. Fla.1980); *In re Fox*, 5 B.R. 317, 320 (Bkrtcy.N.D.Tex.1980); *In re Pelikant*, 5 B.R. 404, 407 (Bkrtcy.N.D.Ill.1980); *In re Daiker*, 5 B.R. 348, 351 (Bkrtcy.D.Minn. 1980); *In re Spong*, 3 B.R. 619, 622 (Bkrtcy. W.D.N.Y.1980); *In re Williams*, 3 B.R. 401, 403 (Bkrtcy.N.D.Ga.1980); *In re Allen*, 4 B.R. 617, 620 (Bkrtcy.E.D.Tenn.1980); *In re Tomeo*, 1 B.R. 673, 677 (Bkrtcy.E.D.Pa. 1979). The Senate Report accompanying the Bankruptcy Reform Act of 1978 explicitly states: "What constitutes alimony, maintenance or support, will be determined under the bankruptcy law, not state law." S.Rep.No.95–989, 95th Cong.2d Sess. 79, *reprinted in* [1978] U.S.Code Cong. & Ad. News 5963, 6320. Both reports also provide that the inquiry under the bankruptcy law is "whether a particular agreement to pay money to a spouse is actually alimony or a property settlement." *Id.*

■ Under § 523[a][5] it is not merely the parties' own designation of a debt or debts as alimony or a property settlement that decides the issue; rather, it is the nature of the claim underlying the debt that determines the extent of the dischargeability. It thus becomes necessary, "to examine the agreement and all circumstances surrounding the creation of the liability to determine if the debt here is in the nature of alimony, maintenance, or support." *In re Fox, supra*, at 320.

■ Significantly, the legislative history makes clear that an agreement by the debtor will lie to hold a spouse harmless on joint debts to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as opposed to a property settlement. S.Rep.No.95–989, *supra*; H.Rep.No.95–595, *supra*.

As stated in *Collier, supra*, at 523–110 to –111:

> Whether a property settlement agreement is in the nature of alimony is not necessarily the test under Section 523[a][5], although if it is indeed "alimony" the liability will be nondischargeable. If the parties enter into a property settlement agreement, the purpose of which is to provide maintenance for or support of both spouse or child [sic], the obligation falls within the terms of Section 523[a][5] and is excepted from discharge.

In *In re Dorman*, 3 C.B.C.2d 497 (Bankr. Ct.D.N.J.1981) the court was confronted with the issue of whether legal fees and costs expended by debtor's wife fell within the exception provisions of § 523[a][5]. The Honorable Vincent J. Commisa, the presiding bankruptcy judge, noting that no definition of alimony is provided in the Bankruptcy Code, adopted the following test:

> In considering the question of what items may or may not be considered as alimony and support, the courts have used the test of what "needs" or "necessaries" are essential to maintain a spouse in a manner commensurate with her former status as a wife.

*Id.* at 499.

In New Jersey the award of counsel fees flows from rules R. 4:75, R. 4:42–9[a][1].

The nature of counsel fees pursuant to the foregoing rules has been clearly announced in *Williams v. Williams*, 59 N.J. 229, 281 A.2d 273 (1971), wherein the Supreme Court said:

> .... Those factors having been met, it is the policy of our law that counsel fees and costs in matrimonial actions are properly the obligation of the husband, and he shall be compelled to furnish them to the wife. In this respect counsel fees and costs are not unlike other categories of 'necessaries' which the law compels the husband, the usual repository of family finances, to furnish the wife.

In *Pelusio v. Pelusio*, 130 N.J.Super. 538, 328 A.2d 10 (1974), the Appellate Division of the Superior Court of New Jersey, considering the dischargeability of awarded counsel fees, stated:

> In our view the counsel fees and costs awarded to the plaintiff wife upon the entry of the final judgment of divorce are as much 'necessaries' as are alimony, maintenance and support and, as such, fall within that class of indebtedness excepted from release by a discharge in bankruptcy. 11 U.S.C.A. § 35[a][7]; *Turman v. Turman*, 438 P.2d 488 (Okl.Sup.Ct. 1968); *Allison v. Allison*, 150 Colo. 377, 372 P.2d 946 (1962). See R. 4:42–9; *Williams v. Williams*, 59 N.J. 229, 233, 281 A.2d 273 (1971).

Upon an examination of the prevailing law, it would appear that counsel fees are equated with alimony as they defray the wife's expense in prosecuting or defending a matrimonial action, thus putting her in a position to litigate on the same footing as her husband. See *In re Hargrove*, 361 F.Supp. 851 (U.S.D.C.W.D.Mo.1973); *In re Brenner*, 39 F.Supp. 1022 (E.D.N.Y.1941).

Other courts, faced with similar issues under similar circumstances, have viewed the intent of the parties as the most vital relevant factor to be considered in determining what constitutes alimony, maintenance or support. *See Melichar v. Ost*, 7 B.R. 951 (D.C.Mo.1980); *In re Williams, supra*, at 404.

We deem it significant that in the very subsection of the Final Judgment of Divorce, dated January 30, 1980, in which the plaintiff debtor assumes his share of the within obligations, it is expressly provided:

> The obligations which the plaintiff hereby agrees to pay are considered as support obligations on behalf of the defendant and the four children of the parties.

Certainly, the nominal wages of $131.00 per week net earned by the defendant spouse at the time of the hearing,[1] and the apparent differential in earnings and earning potential[2] suggest that, apart from the aforecited express designation of support, the plaintiff debtor assumed the debts in question for purposes of support of defendant spouse and four children.

Plaintiff's counsel's contention that only alimony, maintenance or support owed directly to a spouse or dependent is nondischargeable under § 523[a][5] is without merit, apparently deriving from a misplaced reliance on the Senate Judiciary Committee Report accompanying the Senate bill S2266. See *In re Spong, supra*, at 621.

The present version of § 523[a][5] was the upshot of a compromise between the House bill, H.R. 8200, and the Senate bill. The slight variation in the wording of the two bills apparently sparked the House and Senate debates on the final version of H.R. 8200, leading to the amendment of § 523[a][5] to read as it now does. See *id.* The compromise was explained by the floor managers in a joint explanatory statement:

> Section 523[a][5] is a compromise between the House bill and the Senate amendment. The provision excepts from discharge a debt owed to a spouse, former spouse or child of the debtor, in connection with a separation agreement, divorce decree, or property settlement agreement, for alimony to, maintenance for, or support of such spouse or child but not to the extent that the debt is assigned to another entity. If the debtor has assumed an obligation of the debtor's spouse to a third party in connection with a separation agreement, property settle-

---

1. See State Court transcript at 2 (August 21, 1979).

2. See *id.* at 22.

ment agreement, or divorce proceeding, *such debt is dischargeable to the extent that payment of the debt by the debtor is not actually in the nature of alimony, maintenance or support of debtor's spouse, former spouse or child.*

154 Cong.Rec. H11,096 (daily ed. Sept. 28, 1978); 161 Cong.Rec. S17,412 (daily ed. Oct. 6, 1978). (Emphasis added.)

Applying the foregoing principles to the circumstances here, the Court holds the debts in question and the counsel fees awarded by the state matrimonial court to be nondischargeable. Legal fees and costs expended by defendant spouse for enforcement of the nondischarged/nondischargeable debts are similarly held to be nondischargeable. *See In re Dorman, supra,* 497–502; *In re Pelikant, supra,* at 408; *Pelusio v. Pelusio,* 130 N.J.Super. 538, 539, 328 A.2d 10 (App.Div.1974) (per curiam).

Accordingly, the Petition and Order To Show Cause seeking to restrain defendant Anne Romeo from attempting to force Donald A. Romeo, the debtor herein, to pay subject debts is dismissed.